IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

BANDAS LAW FIRM, PC and             §
CHRISTOPHER BANDAS                  §           CIVIL ACTION
                                    §
v.                                  §           NO. 2:17-cv-00095
                                    §
LANDMARK AMERICAN INSURANCE         §
COMPANY                             §

---

## REQUEST FOR PRELIMINARY INJUNCTION

NOW COME Plaintiffs, Bandas Law Firm, PC and Christopher Bandas, and ask the court to grant them a preliminary injunction, and in support thereof would show the following:

**1.      Summary of Argument.**  Plaintiffs face an imminent threat of an interruption in their defense in Cause No. 1:16-cv-11057, *Edelson PC, et al. v. Bandas Law Firm, P.C., et al.* ("*Edelson*"). Defendant Landmark American Insurance Company ("Landmark") has refused to assume the costs of defense in *Edelson* unless defense counsel agrees to a reduction in rates.  Landmark claims defense counsel's rates are not reasonable.  As set forth below, defense counsel's rates fall within what is customary and reasonable; Plaintiffs will suffer irreparable harm if Landmark does not immediately assume the costs of defense; Plaintiffs are likely to prevail on this issue at trial; the balance of equities favors an injunction requiring Landmark to advance the defense costs; and an injunction would not be contrary to public policy.  Accordingly, Plaintiffs respectfully request the court enter a preliminary injunction requiring Landmark to advance the costs of litigation.

**2.      Introduction & Procedural Background**.

2.1.     Plaintiffs Bandas Law Firm, PC and Christopher Bandas filed suit in Texas state court seeking a declaration that Landmark has a duty to defend Plaintiffs in the *Edelson* suit and requesting attorney fees, costs, and other damages for Landmark's failure to assume their duty of de-

fend pursuant to the terms of Plaintiffs' professional liability policy. Landmark removed this case to federal court on March 10, 2017.

2.2.    In its answer, "Landmark admits that it has agreed to defend Plaintiffs in connection with an underlying lawsuit . . . and has allowed Plaintiffs to select independent counsel of their own choosing to defend Plaintiffs in that action subject to a reservation of rights."[1]  As an affirmative defense, Landmark asserts that the defense "is limited to those costs and expenses that are 'reasonable and necessary' to Bandas' defense of the Edelson Lawsuit."[2]

2.3.    Plaintiffs purchased a professional liability policy issued by Landmark. The policy required Landmark to provide a defense and indemnity for actions covered by the policy. The policy provides, in relevant part:

> The Company will have the right and duty to defend any Claim against an Insured seeking Damages to which this Policy applies, even if any of the allegations of the Claim are groundless, false or fraudulent. The Company's right and duty to defend any Claim shall end when the Company's Limit of Liability has been exhausted by payment of Damages and/or Claim Expenses, or has been tendered to the Insured, or to a court of competent jurisdiction.[3]

2.4.    On December 5, 2016, Jay Edelson, a class action attorney from Chicago, brought a class action lawsuit, *Edelson*, in the Northern District of Illinois in Chicago, seeking a declaration pursuant to the All Writs Act labeling Mr. Bandas a vexatious litigant, in addition to civil damages for alleged violations of the Rackateer Influenced and Corrupt Organizations Act (RICO) and for Abuse of Process, all arising out of Plaintiffs' representation of an objector in a class action lawsuit,

---

[1]    Doc. 4 at 4; *see also* Exhibit 1A, Feb. 17, 2017 Letter, at 1:

> Landmark has agreed to defend Bandas in the *Edelson* lawsuit subject to a reservation of rights. Landmark also agreed to allow Bandas to select independent counsel to defend Bandas in the *Edelson* lawsuit. Landmark has not agreed, nor is it bound to pay, any and all amounts or expenses incurred by independent counsel. Such fees and expenses must be reasonable and necessary

[2]    Doc. 4 at 7.

[3]    Exhibit 1B, Professional Liability Policy, at 4 (Part IB – Defense and Settlement).

Cause No. 2016-CH-06603, *Ramona v. Gannett Co., Inc.*, in the Circuit Court of Cook County, Illinois ("*Gannett*").[4] Mr. Edelson served as class counsel in *Gannet*.

2.5.     The *Edelson* lawsuit is a groundless attempt to intimidate Mr. Bandas from further representation of objectors in class action suits; nonetheless, it has potentially serious financial, personal, professional, and even potential criminal consequences for Plaintiffs if not vigorously defended by competent and experienced counsel.

2.6.     As of the filing of this motion, defense counsel has not been paid for any of their work in the four months of litigation, and there is a serious threat of an interruption in the defense if counsel is not paid.[5]

2.7.     Interestingly, Landmark agreed to assume the costs of defense in *Edelson*, but seeks to impose restrictions on coverage, which are unreasonable and contrary to the insurance policy.[6] Specifically, Landmark demands Plaintiffs' counsel provide their services at a reduced hourly rate:

> The reasonably hourly rate is based on the prevailing market rates in the relevant community. Landmark has proposed to pay its usual and customary rates for defense counsel in the Chicago area for similar types of litigation.[7]

2.8.     Landmark has not identified what its usual and customary rate are, nor have they provided any evidence that defense counsel's rates are not within what is customary and reasonable in this area and for this type of litigation.

2.9.     Furthermore, the Landmark policy does not impose any limitations on the rates defense counsel may charge.[8] Texas courts have long held that legal fees must be reasonable; however, reasonableness is determined based upon the rates customarily charged in the locality for similar le-

---

[4]     Exhibit 4, *Edelson* Complaint.

[5]     Exhibit 1, Declaration of Christopher A. Bandas, at ¶¶ 16–9.

[6]     Exhibit 1A, Feb. 17, 2017 Letter; Exhibit 1C, Jan. 16, 2017 Reservation of Rights Letter, at 1.

[7]     Exhibit 1A, Feb. 17, 2017 Letter, at 1.

[8]     Exhibit 1B, Professional Liability Policy, at 8 (Part III, Definitions).

gal services, not the discounted rates typical of an insurer-panel counsel relationship.[9]  Defense

counsel's rates are well within the norms of what is customary and reasonable for similar services

(civil RICO attorneys) in the Chicago area.[10]

2.10.    Landmark additionally requests that defense counsel review its billing guidelines and

"reserves the right to audit defense counsel's billing and pay only those fees and expenses that are

reasonably incurred and necessary for the defense."[11]  Plaintiffs asserts that defense counsel is not

required to turn over any billing records to Landmark because a conflict of interest exists, the rec-

ords are subject to attorney-client privilege, and the records could potentially compromise the de-

fense in *Edelson*.  Nevertheless, this is not an issue because Landmark's refusal to assume the costs of

defense is based solely on defense counsel's hourly rates.[12]

2.11.    If Landmark does not immediately assume the costs of defense, Plaintiffs are likely

to suffer irreparable harm, including an interruption in their defense and, potentially, a loss of com-

petent and experienced counsel.[13]

### 3.    Standard for Injunctive Relief

3.1.    The party seeking injunctive relief must generally show: (1) it is likely to suffer irrepa-

rable harm in the absence of the requested relief; (2) it is likely to succeed on the merits; (3) the

threatened injury to movant outweighs any harm that will result to the non-movant if the injunction

---

[9]    *See, e.g., Sullivan v. Abraham*, 472 S.W.3d 677, 682–83 (Tex. App—Amarillo 2014, *rev'd on other grounds*):

> [T]he Texas Disciplinary Rules of Professional Conduct cite "the fee customarily charged
> in the locality for similar legal services" as the appropriate rate when calculating attorney's
> fees. [Opposing counsel] made no effort to establish through evidence that the hourly rate
> charged in Houston, Dallas, San Antonio, and Austin is or likens to the hourly rate
> "charged in the locality" or general area of the trial court . . . .

[10]    Exhibit 1, Declaration of Christopher A. Bandas, at ¶ 15; Exhibit 2, Declaration of Matthew Connelly; Exhibit 3, Declaration of Alexander Vesselinovitch.

[11]    Exhibit 1A, Feb. 17, 2017 Letter, at 2.

[12]    *Id.* at 2–3.

[13]    Exhibit 1, Declaration of Christopher A. Bandas, at ¶¶ 9–20.

is granted; and (4) the requested injunction is not contrary to public interest.[14]

      3.2.     When an injunction seeks to alter the status quo, the movant typically carries a heavi-er burden with regard to showing likely success on the merits.[15]  However, "[w]here a preliminary injunction grants only part of the relief to which a movant would be entitled on the merits and re-quires a party 'to do what it should have done earlier,' " the movant's burden is less, and it only need demonstrate a "likelihood" of success, as opposed to a substantial likelihood of success.[16]

      3.3.     Here, the plain language of the policy requires Landmark to defend any claim to which the policy applies and promptly "pay on behalf of the Insured . . . all sums that the Insured becomes legally obligated to pay as Damages and associated Claim Expenses."[17]  Moreover, Land-mark agreed to assume the costs of defense, albeit at a lower rate.[18]  As Plaintiffs seek a preliminary injunction only with regard to what Landmark has already agreed to do, Plaintiffs' burden is lower. However, Plaintiffs can meet either standard.

**4.     Plaintiffs will suffer irreparable injury from Landmark's decision to not ad-vance defense costs for covered claims.**

      4.1     Several courts have held that an insurer's refusal to advance defense expenses to an insured due under a professional liability or a D&O policy may cause irreparable harm to the insured

---

[14]   *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008) (citing *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003)).

[15]   Where a party seeks a mandatory injunction that would alter the status quo, the moving party must "satisfy an even heavier burden of showing that the four factors listed above weigh heavily and compellingly in [its] favor." *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098–99 (10th Cir. 1991); *GTE Corp. v. Williams*, 731 F.2d 676, 679 (10th Cir. 1984) ("The burden on the party seeking a preliminary injunction is especially heavy when the relief sought would in effect grant plaintiff a substantial part of the relief it would obtain after a trial on the merits." (citations omitted)); *No Spray Coalition, Inc. v. City of New York*, 252 F.3d 148, 150 (2d Cir. 2001).

[16]   *In re Worldcom, Inc. Securities Litigation*, 354 F. Supp. 2d 455, 463 (S.D.N.Y. 2005) (quoting *Johnson v. Kay*, 860 F.2d 529, 541 (2d Cir. 1988)); *see also SCFC ILC, Inc.*, 936 F.2d at 1098–99; *GTE Corp*, 731 F.2d at 679; *No Spray Coalition, Inc.*, 252 F.3d at 150.

[17]   Exhibit 1B, Professional Liability Policy, at 4.

[18]   Exhibit 1C, January 16, 2017 Reservation of Rights Letter, at 1.

---

sufficient to warrant injunctive relief.[19] As the *WorldCom* court explained:

> Every party . . . requires effective representation. It is impossible to
> predict or quantify the impact on a litigant of a failure to have ade-
> quate representation at this critical stage of litigation. The ability to
> mount a successful defense requires competent and diligent represen-
> tation. The impact of an adverse judgment will have ramifications
> beyond the money that will necessarily be involved. There is the
> damage to reputation, the stress of litigation, and the risk of financial
> ruin—each of which is an intangible but very real burden.[20]

4.2    Similarly, in *Pendergest-Holt*, the district court for the Southern District of Texas held

that the insureds would suffer an immediate and direct injury if the court did not grant the requested

relief because the insureds would be deprived of their defense expenses: "Without the ability to

fund an adequate defense in such a complex case, Plaintiffs no doubt face irreparable harm."[21]

4.3    Here, Plaintiffs face an ongoing civil action, and like the insureds in the above-

referenced cases, face damage to reputation, the stress of litigation, potential loss the insured's li-

cense to practice law, the possibility of a criminal investigation and/or prosecution if civil liability is

assessed, and the risk of financial ruin—each of which have been recognized by courts as intangible,

---

[19]   *See, e.g., Ridder v. Cityfed Fin. Corp.*, 47 F.3d 85, 87 (3d Cir. 1995) (finding that applicants had
demonstrated that irreparable harm would result if legal fees were not advanced); *Pendergest-Holt*, 681 F.
Supp. 2d 816, 820–21 (S.D. Tex. 2010); *WorldCom*, 354 F.Supp.2d at 469 ("The failure to receive defense
costs when they are incurred constitutes 'an immediate and direct injury' … [and] [t]o hold otherwise,
'would not provide insureds with protection from financial harm that insurance policies are presumed to
give.'") (citing *Wedtech Corp. v. Federal Ins. Co.*, 740 F. Supp. 214, 221 (S.D.N.Y. 1990) and *Nu-Way
Environmental, Inc. v. Planet Ins. Co.*, No. 95 573, 1997 WL 462010 at *3 (S.D.N.Y. Aug. 12, 1997)); *see In re
Adelphia Communications Corp.*, 2004 WL 2186582, *7 (S.D.N.Y. Sept. 27, 2004) (holding, inter alia, that
failure to provide defense costs constituted irreparable harm to insureds); *In re CyberMedica, Inc.*, 280 B.R.
12, 18-19 (Bankr.D.Mass. 2002) (granting relief from automatic stay in bankruptcy for cause because
directors and officers would suffer irreparable harm if prevented from exercising their rights to defense
payments under D&O policy); *see also In re Corr-Williams Tobacco Co.*, 691 So.2d 424, 429 (Miss. 1997)
(settlement driven by a party's inability to pay defense expenses constitutes irreparable harm).

[20]   *WorldCom* , 354 F.Supp.2d at 469.

[21]   *Pendergest-Holt*, 681 F. Supp. 2d at 831; *see also WorldCom*, 354 F.Supp.2d at 469; *Nu-Way*, 1997 WL
462010 at *3 ("[T]o hold otherwise would not provide insureds with protection from financial harm that
insurance policies are presumed to give."); *Wedtech Corp. v. Federal Ins. Co.*, 740 F. Supp. at 221 (Where an
insurance policy obligates the insurer to defend the insured, the insurer must defend the insured in every
suit in which the complaint permits proof of facts establishing coverage until the insurer is able to
exclude the possibility of any recovery for which it provided insurance).

---

but very real burdens.[22] An insured bargains not only for the monetary benefits of the insurance contract but also "for the peace of mind, or comfort, of knowing that it will be protected in the event of a catastrophe."[23]

4.4    Plaintiffs do not have the resources to fund an ongoing defense of a complex civil action in an expensive, foreign jurisdiction.[24] Few litigants would, and that is why they purchase insurance.

4.5    In sum, there can be no serious dispute that Plaintiffs will suffer very serious and irreparable harm if Landmark continues in its refusal to assume the defense costs in *Edelson*. The first factor thus weighs strongly in favor of granting the requested injunctive relief.

**5.    Plaintiffs are likely to prevail on the merits and more deliberate investigation is required.**

5.1    To obtain an injunction, Plaintiffs are not required to prove they will prevail on all issues and claims at trial.[25] Rather, the court need only be persuaded Plaintiffs have a likelihood of succeeding on the issue for which an injunction is sought.[26]

5.2    Here, Plaintiffs are likely to succeed on the issue of whether Landmark has a duty to assume the costs of defense at defense counsel's rates. An insurer has a duty to defend as long as

---

22    *WorldCom*, 354 F.Supp.2d at 469.

23    *Bi-Economy Market, Inc. v. Harleysville Ins. Co. of New York*, 886 N.E.2d 127, 131 (N.Y. 2008) (internal citations omitted).

24    Exhibit 1, Declaration of Christopher A. Bandas, at ¶ 17.

25    *Pendergest-Holt*, 681 F. Supp. 2d at 831; *In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 466–67 (S.D.N.Y. 2005); *Cho v. Itco, Inc.*, 782 F. Supp. 1183, 1185 (E.D. Tex. 1991).

26    *See e.g.*, *Pendergest-Holt*, 681 F. Supp. 2d at 831 (concluding that trial court need not decide what factual determinations must be made to satisfy exclusions—"that goes to the very heart of the merits of this case"—which can only be reached after "more deliberate investigation and a full trial on the merits"); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003); *Allied Mktg. Group, Inc. v. CDL Mktg. Inc.*, 878 F.2d 806, 809 (5th Cir. 1989); *Cho*, 782 F. Supp. at 1185; *Sebastian v. Tex. Dep't of Corrections*, 541 F. Supp. 970, 975 (S.D. Tex. 1982).

---

there is at least one covered claim.[27] This duty to defend presents a heavier and broader burden, distinct and separate from the duty to indemnify.[28] Moreover, the insurer's duty to defend generally remains in effect until there has been a final judicial determination that there is no coverage.[29]

     5.3     Landmark has already agreed to assume the costs of defense, but it disputes the reasonableness of defense counsel's rates.[30] Importantly, the Landmark policy does not permit the insurer to determine what constitutes a reasonable hourly rate.[31] If such a requirement exists, it rests with the court to make that determination. Finally, Plaintiffs have produced evidence showing defense counsel's rates are within the norms of what is customary and reasonable.[32]

     5.4     As previously stated, the policy provides that Landmark's duty to defend any claim

---

[27]   "[T]he insurer is obligated to defend if there is, potentially, a cause under the complaint within the coverage of the policy." *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir. 1983) (quoting *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)); *see also Bay Elec. Supply, Inc. v. Travelers Lloyds Ins. Co.*, 61 F. Supp. 2d 611, 615 (S.D. Tex. 1999) ("An insurance company has a duty to defend the entire case so long as the underlying complaint alleges facts constituting at least one cause of action covered by the policy." (citing *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 398 (5th Cir. 1995))); *Am. Motorists Ins. Co. v. Excel Telcoms.*, No. 3:97-CV-1183-P1998 U.S. Dist. LEXIS 9970 (N.D. Tex. June 29, 1998). If there is doubt as to whether the complaint states a covered cause of action, doubt "will be resolved in the insured's favor." *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir. 1983) (quoting *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)). Moreover, the meaning of allegations are to be given liberal interpretation. *Heyden*, 387 S.W.2d at 26.

[28]   *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185 (Tex. 2002) (citing *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997); *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998) (applying Texas law); *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, 267 F. Supp. 2d 601, 606 (E.D. Tex. 2003).

[29]   Given the heightened obligations associated with the duty to defend, the insurer cannot suspend its defense obligation pending a judicial determination. The insurer must assume the costs of defense until a contrary judicial determination has been made. *See Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001) (" 'so long as the claims [asserted against the insured] may rationally be said to fall within the policy coverage, *whatever may later prove to be the limits of the insurer's responsibility to pay*, there is no doubt that it is obligated to defend.' " (quoting New York case)); *WorldCom*, 354 F. Supp. 2d at 470 ("The issue here is whether [the insured] . . . is entitled to ongoing payment of defense costs until there is a judicial determination that the right does not exist. Under the terms of the [] policy, and for the reasons set forth here, the answer is yes.").

[30]   Doc. 4 at 4; *see also* Exhibit 1A, Feb. 17, 2017 Letter, at 1.

[31]   Exhibit 1B, Professional Liability Policy.

[32]   Exhibit 1, Declaration of Christopher A. Bandas, at ¶ 15; Exhibit 2, Declaration of Matthew Connelly; Exhibit 3, Declaration of Alexander Vesselinovitch.

shall end when the company's limits of liability have been exhausted by payment of claim expenses, or the issue has been tendered to a court of competent jurisdiction.[33] The Landmark policy provides the following definition for claim expenses:

> Claim Expenses means expenses incurred by the Company or the Insured with the Company's consent, in the investigation, adjustment, negotiation, arbitration, mediation and defense of covered Claims, whether paid by the Company or the Insured with the Company's consent, and include:
>
> 1. Attorney fees;
> 2. Costs assessed against the Insured in any Claim defended by the Company;
> 3. Interest on the full amount of any judgment that accrues after entry of the judgment and before the Company has paid, offered to pay or deposited in court that part of the judgment within the applicable Limit of Liability;
> 4. The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the available applicable policy limit, and only if said Claim is covered by the policy;
> 5. Reasonable expenses incurred by the Insured at the Company's request other than:
>     a. Loss of earnings;
>     b. Salaries or other compensation paid to the Insured or any employee of the Insured.[34]

5.5     The policy's definition of "claim expenses" does not grant the insured has the right to determine whether the attorney fees are reasonable, or impose any other limitations on defense counsel.  Furthermore, to the extent ethical rules or common law impose such a requirement, Plaintiffs have presented evidence the rates are well within the bounds of what is reasonable and customary for this locale and for this type of work.[35]

5.6     In sum, Landmark has not denied it has a duty to assume the costs of the defense; but rather, it believes defense counsel's rates are unreasonable.[36] There is a substantial likelihood of success on this issue because the policy does not grant the insurer the right to determine what is rea-

---

[33]   Exhibit 1B, Landmark Professional Liability Insurance Policy.

[34]   *Id.* at 8 (Part III, Definitions).

[35]   Exhibit 1, Declaration of Christopher A. Bandas, at ¶ 15; Exhibit 2, Declaration of Matthew Connelly; Exhibit 3, Declaration of Alexander Vesselinovitch.

[36]   Doc. 4 at 4; Exhibit 1A, Feb. 17, 2017 Letter, at 1.

sonable, and Plaintiffs have presented evidence that defense counsel's rates are well within the bounds of what is customary and reasonable under the circumstances.

**6.      Balance of hardships favors requiring Landmark to advance Plaintiffs their defense costs.**

6.1      As set forth above, Plaintiffs may suffer irreparable harm, including the damage to reputation, financial ruin, stress of litigation, loss of the insured's license to practice law, and the possibility of a criminal investigation and/or prosecution if the claims against Plaintiffs are not vigorously defended by competent and experienced counsel.[37]

6.2      By contrast, an injunction requiring Landmark to comply with its contractual obligations to advance defense costs imposes no harm on Landmark, because Landmark has already agreed to pay for such costs. Morevoer, Landmark's potential liability, and economic harm, is capped by the policy limits, which Landmark consented to in issuing the policy.[38] Any potential harm to Landmark is purely economic, as compared to the very serious consequences likely to result to Plaintiffs if the *Edelson* lawsuit is not vigorously defended, or if there is an interruption in the defense or Plaintiffs' chosen counsel. The *Edelson* suit was filed on December 5, 2016, and defense counsel has been working for four months without compensation. If counsel is not paid soon, there is a serious threat of an interruption in Plaintiffs' defense and the very negative consequences this could entail.[39]

6.3      In sum, requiring Landmark to do what it is obligated by contract and by law to do causes no harm at all. Even if Landmark were eventually to prevail on its coverage argument, granting injunctive relief here would not interfere with its right to seek a legal remedy.[40] Accordingly, the

---

[37]   *WorldCom*, 354 F. Supp. 2d at 469.

[38]   *See Pendergest-Holt*, 681 F. Supp. 2d at 832 (citing *Worldcom*, 354 F. Supp. 2d at 469–70).

[39]   Exhibit 1, Declaration of Christopher A. Bandas, at ¶¶ 17–20.

[40]   *See WorldCom*, 354 F.Supp.2d at 469–71 (noting that the insurer must pay defense costs in advance,

balance of hardships strongly favors granting the injunctive relief Plaintiffs seek and requiring

Landmark to comply with its agreement to assume the costs of defense.

### 7. Preliminary injunction is not contrary to public interest.

7.1      A plaintiff seeking a preliminary injunction must also establish the injunction will not

disserve the public interest.[41]

7.2      First, public interest favors the speedy resolution of cases and safeguarding of the

defendant's constitutional rights.[42]  The quasi-criminal nature of the RICO claim in *Edelson* implicate

potential constitutional issues, and the claims could seriously impact Mr. Bandas' freedom to pursue

his chosen profession.  An experienced attorney is necessary to navigate this treacherous landscape

and protect Plaintiffs' rights in the underlying litigation.

7.3      Second, it is in the public's interest the parties abide by their contractual obliga-

tions.[43]  Not only does the insurance policy require it, but Landmark also agreed to assume the bur-

den of defense in *Edelson*.  The policy states that Landmark has a duty to defend until the insurance

company's limits of liability have been exhausted by payment of claim expenses or been tendered to

a court of competent jurisdiction.[44]  Landmark has the burden to prove an exclusion to coverage and

a duty to advance defense costs until a final judicial determination excluding coverage.[45]  Landmark

---

subject to the right to recover such costs in the event the insurer prevails as to lack of coverage); *Kozlowski*, 18 A.D.3d at 42 (same).

[41]   *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008).

[42]   *See Flood*, 2009 U.S. Dist. LEXIS 2145, 2009 WL 87006, at *6.

[43]   *See Pendergest-Holt*, 681 F. Supp. 2d at 833 (citing *Great Am. Ins. Co. v. Gross*, No. 3:05-cv-159, 2005 U.S. Dist. LEXIS 8003, at *6 (E.D. Va. May 3, 2005)).

[44]   Exhibit 1B, Professional Liability Policy, at 4 (Part I-B – Defense and Settlement)..

[45]   *See, e.g., Trinity Universal v. Emplrs. Mut. Cas. Co.*, 592 F.3d 687, 692 (5th Cir. 2010) ("when the language of a policy is susceptible to more than one construction, it should be construed strictly against the insurer and liberally in favor of the insured"); *Fed. Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 723 (5th Cir. 1999) ("when the insurer relies on the policy's exclusions, it bears the burden of proving that one or more of those exclusions apply"); *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 212 (5th Cir. 2009) (citing *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987)).

needs to assume its duties under the contract, before Plaintiffs are irreparably injured. Insurers should not be allowed to play chicken with their insureds' livelihoods and professional reputations at stake. Moreover, insureds should have some certainty that their insurers will, at a minimum, assume their duty of to provide a defense under the policy.[46]

   7.4  Third, the public interest will not be adversely affected by the issuance of interim injunctive relief in this case. In similar cases, courts have actually found that injunctive relief serves the public's interest.[47] Plaintiffs are dependent upon Landmark for the provision of an adequate defense, without which they would likely suffer ruinous financial injury and potential criminal liability.[48] Plaintiffs' insurance carrier should not be able to reserve for itself the right to decide when and whether to advance defense costs in this matter.[49] Public policy favors certainty that insurance policies and other contractual obligations will be honored and that insurers will honor their heavy burden to defend. Permitting an insurer to hold hostage a defense to extort a reduction in rates is clearly contrary to public policy.

---

[46] "[T]o hold otherwise would not provide insureds with protection from financial harm that insurance policies are presumed to give." *Nu-Way*, 1997 WL 462010 at *3. Furthermore, an insured bargains not only for the monetary benefits of the insurance contract but also "for the peace of mind, or comfort, of knowing that it will be protected in the event of a catastrophe." *Bi-Economy Market, Inc. v. Harleysville Ins. Co. of New York*, 886 N.E.2d 127, 131 (N.Y. 2008) (internal citations omitted).

[47] *See Pendergest-Holt*, 681 F. Supp. 2d at 833 ("it is in the public's interest to see parties abide by their contractual obligations"); *Gross*, 2005 U.S. Dist. LEXIS 8003, at *6; *WorldCom*, 354 F. Supp. 2d at 469–70; *Flood*, 2009 U.S. Dist. LEXIS 2145, 2009 WL 87006, at *7; *Associated Elec. & Gas Ins. Servs., Ltd. v. Rigas*, 382 F. Supp. 2d 685, 701 (E.D. Pa. 2004).

[48] Exhibit 1, Declaration of Christopher A. Bandas, at ¶¶ 11–20.

[49] "Insurance carriers do not function as courts of law. If a carrier wants the unilateral right to refuse payment called for in a policy, the policy should clearly state that right. This policy does not do so." *Pendergest-Holt*, 681 F. Supp. 2d at 833 (quoting *Rigas*, 382 F. Supp. 2d at 700–01).

---

8.      **Conclusion & Prayer.**   If Landmark is not immediately required to advance the

costs of litigation, Plaintiffs are likely to suffer irreparable harm.  Landmark has refused to assume

the costs of defense in *Edelson* without a reduction in rates, claiming that defense counsel's rates are

unreasonable.  As set forth above, this is not a determination Landmark is entitled to make, and de-

fense counsel's rates fall within what is customary and reasonable.  Furthermore, Plaintiffs are likely

to prevail on this issue, the balance of equities favors an injunction, and an injunction would not be

contrary to public policy.  Accordingly, Plaintiffs respectfully request the court enter a preliminary

injunction requiring Landmark to advance the costs of litigation.


Respectfully submitted,

_____/s/  John Swallow  /s/_____
VAN HUSEMAN
State Bar No.: 10323500
S.D. Tex. Federal ID:  1167
vhuseman@husemanstewart.com
ERIC STEWART
State Bar No.: 24058133
S.D. Tex. Federal ID: 776675
estewart@husemanstewart.com
JOHN SWALLOW
State Bar No.: 24085611
S.D. Tex. Federal ID: 2050611
jswallow@husemanstewart.com

**HUSEMAN & STEWART, PLLC**
615 N. Upper Broadway, Suite 2000
Corpus Christi, TX 78401-0781
Tel:      (361) 883-3563
Fax:     (361) 883-0210

## CERTIFICATE OF CONFERENCE

On April 4, 2017, the undersigned counsel for Plaintiffs made contact with counsel for Defendant.  Defendant is opposed to the Request for Preliminary Injunction.

_____/s/  Eric Stewart  /s/_____
ERIC STEWART

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was this 4th day of April, 2017, served via fax and/or CM/ECF on:

Traub Lieberman Straus & Shrewsberry
Brian C. Bassett
Jason Taylor
303 West Madison Street, Ste. 1200
Chicago, IL 60606
312-332-3900
312-332-3908 (Fax)
jtaylor@traublieberman.com
bbassett@traublieberman.com

_____/s/  Eric Stewart  /s/_____
ERIC STEWART